# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2013

Lyle W. Cayce
Clerk

No. 13-50649

GRANT RAWSTON HEADIFEN,

Plaintiff-Appellant

v.

VANESSA HARKER,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:13-CV-00340

Before REAVLEY, DAVIS, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:[*]

The judgment of the district court is affirmed. Appellant Grant Headifen and Appellee Vanessa Harker moved with their child from Austin, Texas to New Zealand; Harker subsequently removed the child back to Texas. Headifen seeks the return of the child to New Zealand under the Hague Convention ("Convention") on the Civil Aspects of International Child Abduction, T.I.A.S. No. 11670, 19 I.L.M. 1501, *codified by* the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601, *et. seq.* On appeal, Headifen argues that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50649

the district court erred in denying the child's return. The only issue on appeal relates to the "habitual residence" of the young child for purposes of the Convention. 42 U.S.C. § 11603(f)(1); Convention art. 3. The district court followed our decision in *Larbie v. Larbie*, 690 F.3d 295 (5th Cir. 2012), and found that the shared intent of both parents was for Texas and not New Zealand to be their habitual residence. This finding is supported by compelling evidence. The district court also found that the child was not integrated into the New Zealand setting or acclimated there, a finding also supported by the evidence. Under the approach for determining habitual residence that we set forth in *Larbie*, 690 F.3d at 310-11, the district court correctly found that the habitual residence of the child was Texas and not New Zealand.

Having acknowledged that *Larbie* governs the outcome in this case, we take the opportunity to observe again that interpretative variability presently exists among circuit courts trying to apply the Convention. *See Larbie*, 690 F.3d at 310 (describing "varying approaches" used by courts). This variability comes about because neither the treaty nor its implementing statute defines the threshold determination that must be made about whether, even assuming a wrongful removal or retention, that act was from somewhere other than "the state of the habitual residence of the child."   42 U.S.C. § 11603(f)(1); Convention art. 3.  If the removal was not from the child's habitual residence, the Convention provides no succor, giving rise to the difficult reality, which the district court in this case did not condone, namely that the adoptive mother absconded to Texas as the residence both parents had intended to return to after their temporary residence in New Zealand.   The fact-intensive discernment by the district court of this shared parental intent to return will generally be determinative, under *Larbie*, of a young child's habitual

No. 13-50649

residence,[1] hence will foreclose treaty relief against what otherwise may be a unilateral absconding with a child.

The judgment of the district court is AFFIRMED.

---

[1] Our reference to parents' intentions has value because it fixes a child's habitual residence for purposes of the Convention in the country where parents, prior to disunion, share a common purpose to reside permanently. For circumstances like those in *Larbie*, this primacy given to expressed intent about a permanent residence is compelling. *Larbie*, 690 F.3d at 298-99; *see also Mozes v. Mozes*, 239 F.3d 1067 (9th Cir. 2001). As we highlighted in *Larbie*, the mother acquiesced and consented to Texas-court authority over the parents' divorce and custody proceedings, and moved temporarily to the United Kingdom only while the father was deployed by the United States Air Force to Afghanistan. *Larbie*, 690 F.3d at 299. In the present case, however, the parents moved their family to New Zealand for several years, living together but later separating. In both cases, the child's overseas residence was intended to be temporary, not indefinite. That is the decisive point, more than that a change of habitual residence can be established only if parents intend to "abandon" or "supplant" their originating country altogether. *See Mozes*, 239 F.3d at 1075.